UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------
JOSEPH EUGENE F.,

                    Plaintiff,           <u>DECISION AND ORDER</u>
                                          1:20-cv-04356-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-----------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

     In March of 2017, Plaintiff Joseph Eugene F.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Dennis Kenny Law, Josephine Gottesman, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 24, 25).

     This case was referred to the undersigned on January 26, 2022. Presently pending are the parties' motions for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 11,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

19). For the following reasons, Plaintiff's motion is denied, the

Commissioner's motion is granted, and this case is dismissed.

## I.  BACKGROUND

### A.    *Administrative Proceedings*

Plaintiff applied for benefits on March 28, 2017, alleging disability

beginning April 6, 2016. (T at 10).[2]  Plaintiff's application was denied

initially and on reconsideration.  He requested a hearing before an

Administrative Law Judge ("ALJ").  A hearing was held on January 10,

2019, before ALJ Kieran McCormack. (T at 26). Plaintiff appeared with an

attorney and testified. (T at 32-60). The ALJ also received testimony from

Robert Baker, a vocational expert. (T at 60-63).

### B.    *ALJ's Decision*

On January 31, 2019, ALJ McCormack issued a decision denying the

application for benefits. (T at 7-24).  The ALJ found that Plaintiff had not

engaged in substantial gainful activity since April 6, 2016 (the alleged onset

date) and met the insured status requirements of the Social Security Act

through December 31, 2020 (the date last insured). (T at 12).  The ALJ

concluded that Plaintiff's status-post arthroscopic surgery in right shoulder;

degenerative disc disease of the cervical spine; cervical radiculopathy;

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 10.

benign positional vertigo; polymyalgia rheumatic; status-post lumbar fusion; and status-post left and right carpal tunnel syndrome release were severe impairments as defined under the Act. (T at 13).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: he cannot climb ladders, ropes, or scaffolds; but can occasionally climb ramps and stairs; he can occasionally stoop, kneel, and crawl; cannot work at jobs containing any exposure to unprotected heights, unprotected machinery; and/or machinery with moving mechanical parts; can push/pull frequently; can handle, finger, and feel with both hands on a frequent basis; but cannot work at jobs requiring ambulation on uneven surfaces. (T at 14).

The ALJ concluded that Plaintiff could perform his past relevant work as an administrative assistant. (T at 19).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between April 6, 2016 (the alleged onset date) and February 5, 2019 (the date of the ALJ's

3

decision). (T at 20).  On April 9, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-4).

### C.   Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on June 8, 2020. (Docket No. 1).  On February 12, 2021, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 11, 12).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on June 29, 2021. (Docket No. 19, 20).  On July 19, 2021, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 21).

## II.  APPLICABLE LAW

### A.   Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec*., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises two main arguments in support of his request for

reversal of the ALJ's decision.  First, he challenges the ALJ's credibility

determination.  Second, Plaintiff argues that the ALJ's assessment of the

medical opinion evidence was flawed, which undermines the RFC

determination.  This Court will address both arguments in turn.

A.    *Credibility*

A claimant's subjective complaints of pain and limitation are "an

important element in the adjudication of [social security] claims and must

be thoroughly considered in calculating the [RFC] of a claimant." *Meadors*

*v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec*., 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations,

and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by

substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified to long-standing pain in his shoulders bilaterally and his neck. (T at 44-45). He testified that he can hardly lift his right arm above his head. (T at 46-47). Carpal tunnel pain makes gripping a pen and writing painful. (T at 47). Lifting an item as light as a vacuum causes pain. (T at 47). He experiences pain and stiffness in his neck. (T at 48). Back stiffness makes bending and prolonged sitting painful. (T at 48). He suffers from benign positional vertigo, which causes unpredictable dizziness. (T at 50). He has problems with driving distances due to pain related to sitting and gripping the steering wheel. (T at 51-52).

Shoulder pain interferes with activities of daily living, including personal hygiene. (T at 54). A typical day involves using the computer, preparing simple meals, grocery shopping, reading, cleaning, watching television, and light exercise. (T at 54-55). Vertigo symptoms affect him about once a day. (T at 56-57). Pain interferes with sleep. (T at 57-58).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 15).

For the following reasons, this Court finds the ALJ's decision to discount Plaintiff's credibility supported by substantial evidence and consistent with applicable law.

First, the ALJ found Plaintiff's complaints of disabling pain and limitation not fully consistent with the treatment record, which the ALJ reasonably read as documenting generally unremarkable clinical findings and solid symptom management over time.  (T at 15-17).  For example, in June of 2016, Plaintiff was found to have normal range of motion in the cervical spine, normal motor strength in the upper extremities, no gross sensory changes or deficits, and no tenderness along the cervical spine. (T at 376).  Treatment notes from early 2017 documented reports of "no pain," "minimal pain," or "mild pain," some stiffness, and a "slight" decrease in strength. (T at 285, 293, 296, 299, 302, 308, 311, 314-15, 317).  During the spring of 2017, it was reported that Plaintiff had full range of motion and strength in his right shoulder, x-rays of the left shoulder revealed "mild nonspecific degenerative changes about the acromioclavicular joint," and Plaintiff was described as "doing very well," with "minimal" or no pain. (T at 324, 335, 341, 344, 347, 350).  In April of 2018, Plaintiff reported "some discomfort from his neck which radiates into his arms and hands bilaterally," but "whenever he takes prednisone all of the symptoms go

away." (T at 644). He demonstrated full strength in his upper and lower extremities bilaterally. (T at 645).  In August of 2018, Plaintiff reported having "very little pain." (T at 664).

An ALJ has the discretion to discount a claimant's subjective complaints where, as here, those complaints can be considered inconsistent with the overall clinical assessments and treatment notes. *See Kuchenmeister v. Berryhill*, No. 16 Civ. 7975, 2018 U.S. Dist. LEXIS 9750, at *59 (S.D.N.Y. Jan. 19, 2018); *Rodriguez v. Colvin*, No. 15 Civ. 6350, 2016 U.S. Dist. LEXIS 159003, at *68-69 (S.D.N.Y. Nov. 14, 2016); *Robles v. Colvin*, No. 16CV1557 (KMK) (LMS), 2019 U.S. Dist. LEXIS 62118, at *51 (S.D.N.Y. Apr. 9, 2019).

Second, Plaintiff found Plaintiff's complaints of disabling pain and limitation inconsistent with the medical opinion evidence. (T at 17-18).  Dr. John Caruso performed a consultative examination in April of 2017.  Dr. Caruso described Plaintiff as demonstrating normal gait, full strength in the upper and lower extremities bilaterally, no evident muscle atrophy, and full grip strength. (T at 233, 235). Dr. Caruso noted that Plaintiff rose from his chair with moderate difficulty and almost fell when trying to extend his back. (T at 233, 234).  Dr. Caruso characterized Plaintiff's prognosis as "fair" and opined that he had moderate limitation with respect to rising from a chair,

squatting, bending, and twisting. (T at 236).  He assessed mild limitation for seeing, climbing, reaching, and lifting/carrying heavy objects. (T at 236). Dr. Caruso concluded that Plaintiff would have difficulty sitting, standing, or walking for more than moderate periods of time or for short or greater distances. (T at 236).

In June of 2017, Dr. R. Pradhan, a non-examining State Agency review physician, opined that Plaintiff could lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently. (T at 72).  Dr. Pradhan concluded that Plaintiff could stand/walk for 2 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday. (T at 72).  Dr. Pradhan found Plaintiff limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, as well as occasional stooping, kneeling, crouching, and crawling. (T at 72).

Dr. Allen Meiskel performed a consultative examination in August of 2018.  On examination, Dr. Meiskel described Plaintiff as demonstrating normal gait and the ability to ambulate and rise from a chair without difficulty. (T at 445).  Dr. Meiskel found no evident muscle atrophy. (T at 445-46).  He assessed marked limitation with respect to heavy lifting and carrying, climbing ladders and scaffolds, and being exposed to unprotected heights. (T at 447).  He opined that Plaintiff had mild limitation regarding

the ability to handle objects, and mild limitation regarding fingering, feeling, pushing, and pulling with both hands. (T at 447).  Dr. Meiskel characterized Plaintiff's prognosis as "fair." (T at 447).

The ALJ reasonably found these opinions supported by the record evidence and inconsistent with Plaintiff's subjective complaints of disabling pain and limitation. (T at 17-18).  *See  McLaughlin v. Sec'y of Health, Educ. & Welfare,* 612 F.2d 701, 705 (2d Cir. 1980) (The "ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.")*; DeJesus v. Colvin,* 12 Civ. 7354, 2014 U.S. Dist. LEXIS 22238, at *63 (S.D.N.Y. Jan. 23, 2014) ("[T]he ALJ properly chose to give little weight to [claimant's] unsupported complaints and claims given that he analyzed them in light of the objective medical evidence in the record."); *see also Penfield v. Colvin,* 563 F. App'x 839, 840 (2d Cir. 2014).

Lastly, the ALJ found Plaintiff's activities of daily living inconsistent with his complaints of disabling pain and limitation.  (T at 15-16).  Plaintiff was able to perform work for H&R Block on a seasonal basis (T at 39-40, 170, 224), travel to Florida (T at 285), and attend to personal care and household chores. (T at 54-55, 184-86, 233, 444).

Although ALJs must be careful not to overinterpret a claimant's ability to perform limited tasks as evidence of the ability to maintain full-time, competitive, remunerative work, the regulations expressly permit consideration of the claimant's "daily activities" when assessing credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i). A claimant's "normal range of activities" may be relied upon as evidence that the claimant "retains a greater functional capacity than alleged." *Smoker v. Saul*, No. 19-CV-1539 (AT) (JLC), 2020 U.S. Dist. LEXIS 80836, at *53 (S.D.N.Y. May 7, 2020)(citation omitted).

In particular, "[e]vidence that a plaintiff is capable of participating in various activities of daily living despite allegations of severe pain can support a determination that a plaintiff can perform sedentary work." *Niven v. Barnhar*t, 03 Civ. 9359 (DLC), 2004 U.S. Dist. LEXIS 17337, at *19 (S.D.N.Y. Sept. 1, 2004)(citing *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980)); *see also Rutkowski v. Astrue*, 368 Fed. App'x 226, 230 (2d Cir. 2010)(affirming ALJ's credibility determination in light of "substantial evidence … showing that [claimant] was relatively 'mobile and functional,' and that … allegations of disability contradicted the broader evidence"); *Ashby v. Astrue*, No. 11 Civ. 02010, 2012 U.S. Dist. LEXIS 89135, at *43-44 (S.D.N.Y. Mar. 27, 2012)("As it appears that, in making his credibility

assessment, the ALJ appropriately considered Plaintiff's ability to engage in certain daily activities as one factor, among others suggested by the regulations, this Court finds no legal error in this aspect of the ALJ's analysis.").

There is no question that Plaintiff suffers from pain and limitation. The ALJ did not dismiss Plaintiff's subjective complaints and, in fact, found him limited to a reduced range of sedentary work. (T at 14).  However, "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise, eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for the decision to discount Plaintiff's subjective complaints, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living.  This is sufficient to sustain the disability determination under the deferential standard of review applicable here.  *See Stanton v. Astrue,* 370 Fed App'x 231, 234 (2d Cir. 2010)(stating that courts will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling"); *Hilliard v. Colvin*, No. 13 Civ. 1942, 2013 U.S. Dist. LEXIS 156653, at *48 (S.D.N.Y. Oct. 31, 2013)(finding that ALJ

"met his burden in finding [subjective] claims not entirely credible because [claimant] remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability based on pain").

B.   *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application for benefits was filed on March 28, 2017 (T at 10), the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. See 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the

medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. See 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, the ALJ found the opinions of Dr. Caruso, Dr. Pradhan, and Dr. Mesiel persuasive. (T at 17-18).  The ALJ cited the consistency of these opinions with each other and found them well-

supported by the treatment record, which (as discussed above) generally described unremarkable clinical assessments and well-managed pain and stiffness. (T at 285, 293, 296, 299, 302, 308, 311, 314-15, 317, 324, 335, 341, 344, 347, 350, 644, 645, 664).

Plaintiff argues that the ALJ's reliance on the medical opinion evidence was misplaced, as neither consultative examiner offered a comprehensive assessment of his work-related limitations.  Plaintiff further asserts that the ALJ erred by failing to incorporate Dr. Caruso's opinion that he would have difficulty sitting, standing, or walking for more than moderate periods of time or for short or greater distances. (T at 236).  Plaintiff contends that these errors, in turn, undermine the ALJ's RFC determination.

The ALJ, however, may reach a determination that "does not perfectly correspond with any of the opinions of medical sources," provided the overall assessment is supported by substantial evidence and consistent with applicable law. *See Trepanier v. Comm'r of SSA*, 752 Fed. Appx. 75, 79 (2d Cir. 2018).  Further, ALJs are not required to "reconcile every conflicting shred of medical testimony," *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981), provided they discuss the evidence and factors "crucial" to the disability determination with "sufficient specificity to enable [this Court]

to decide whether the determination is supported by substantial evidence."
*Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)(citing *Treadwell v.
Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)).

Here, the ALJ reasonably relied on the opinion of Dr. Pradhan, the
non-examining State Agency review physician, finding that opinion
supported by the objective record. (T at 17). Although Plaintiff asserts in
conclusory fashion that medical evidence developed after Dr. Pradhan
reviewed the record undermines the physician's findings, the ALJ
discussed all the medical evidence (including the evidence that post-dated
Dr. Pradhan's review) and found it consistent with Dr. Pradhan's
conclusions. (T at 16-17).

"'[S]tate agency physicians are qualified as experts in the evaluation
of medical issues in disability claims,' and as such, 'their opinions may
constitute substantial evidence if they are consistent with the record as a
whole.'" *Distefano v. Berryhill*, 363 F. Supp. 3d 453, 474 (S.D.N.Y.
2019)(quoting *Leach ex rel. Murray v. Barnhart,* 02 Civ. 3561, 2004 U.S.
Dist. LEXIS 668, at *26 (S.D.N.Y. Jan. 22, 2004)); *see also Ortiz v. Comm'r
of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018)("Moreover, the
opinion of a non-examining medical expert … may be considered
substantial evidence if consistent with the record as a whole.").

Moreover, the ALJ incorporated the restrictions identified by Dr. Meisel (T at 447) by limiting Plaintiff to sedentary work, with no climbing of ladders, ropes, or scaffolds, no exposure to unprotected heights, and no more than frequent fine motor activities with his hands bilaterally. (T at 14). *See Petrie v. Astrue*, 412 Fed. App'x 401, 406 (2d Cir. 2011)("The report of a consultative physician may constitute … substantial evidence.").

To the extent the ALJ did not adopt Dr. Caruso's assessment of moderate limitation regarding prolonged sitting, standing, or walking, that decision was supported by a reasonable reading of the treatment record and by the assessments of Dr. Pradhan and Dr. Meisel, neither of whom assessed that degree of limitation.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Plaintiff also asserts that the ALJ should have further developed the record by seeking an assessment from one or more of the treating providers.  It is well-settled that ALJs have an affirmative duty to develop the record even where, as here, the claimant is represented by counsel. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

However, the ALJ's "obligation to assemble the claimant's medical records, although robust, "is not unlimited." *Clarke v. Comm'r of Soc. Sec.,*

No. 19-CV-7213 (BCM), 2021 U.S. Dist. LEXIS 113808, at *37 (S.D.N.Y. June 16, 2021)(quoting *Myers ex rel. C.N. v. Astru*e, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012)).  In determining whether an ALJ satisfied this obligation, the court will consider the representations of claimant's counsel regarding whether additional medical evidence is necessary for a complete review. *See, e.g., Clarke*, 2021 U.S. Dist. LEXIS 113808, at *37; *Jordan v. Comm'r of Soc. Sec.*, 142 Fed. App'x 542, 543 (2d Cir. 2005).

Here, Plaintiff's counsel at the administrative hearing advised the ALJ that she had no objections to the evidence, that the record was "complete," and that she was not aware of any additional evidence related to disability. (T at 30).  Moreover, the ALJ extensively discussed the detailed treatment record, including the clinical observations and notes from the treating providers. (T at 15-18).  The record supporting the ALJ's decision includes assessments from a State Agency review physician and two consultative examiners, both of whom conducted and documented thorough clinical examinations. (T at 67-76, 229-43, 443-47).

This Court, therefore, concludes that the ALJ developed the record adequately and that his assessment of the medical opinion evidence and determination of Plaintiff's RFC was supported by substantial evidence and consistent with applicable law.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the
Pleadings (Docket No. 11) is DENIED; the Commissioner's Motion for
Judgment on the Pleadings (Docket No. 19) is GRANTED; and this case is
DISMISSED. The Clerk is directed to enter judgment accordingly and close
the file.

Dated: February 7, 2022          *s/Gary R. Jones*
                                  GARY R. JONES
                                  United States Magistrate Judge